# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| ADRIAN GARCIA RANGEL and<br>JANELLE ALLANE RANGEL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | 4:07-cv-20-AS-APR |
| | ) | |
| CHRIS REYNOLDS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

This case arises from an alleged violation of 42 U.S.C. §1983 in which Plaintiffs claim that their baby was taken from them on February 15, 2007, in violation of their Due Process and Fourth Amendment rights. There are currently twelve pending motions, including five non-dispositive motions, and seven motions to dismiss filed by various Defendants in the case. It bears mentioning at the outset that this Court is aware that Plaintiffs are *pro se* litigants. As such, their pleadings must be held to less stringent standards than those drafted by attorneys. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Alvardo v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001). However, "[*P*]*ro se* litigants are masters of their own complaints," and "District judges have no obligation to act as counsel or paralegal to *pro se* litigants." Myles v. United States, 416 F.3d 551, 552 (7th Cir. 2005). Here, this Court has given all reasonable leniency to Plaintiffs on account of their *pro se* status. Nonetheless, for the reasons that follow, each Motion to Dismiss is **GRANTED**

and, therefore, all non-dispositive Motions are **DENIED** as moot.

## I. Standards of Review

A.    Federal Rule of Civil Procedure 12(b)(1)

The standard of review for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on the purpose of the motion. United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir. 2003) (*en banc*). If a defendant challenges the factual sufficiency of the allegations regarding subject matter jurisdiction, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. Id. The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004).

B.    Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is appropriate if the complaint sets forth no viable cause of action upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Challenger v. Local Union No. 1, 619 F.2d 645, 649 (7th Cir.1980). A complaint must allege facts to state a claim that is plausible on its face. Limestone Development Corp. v. Village of Lemont, Ill., 520 F.3d 797, 803 (7th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). In assessing the propriety of a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them. Jackson v. E.J. Brach

2

Corp., 176 F.3d 971, 977 (7th Cir. 1999). But the court admits only allegations of fact, and is not required to accept legal conclusions. Fries v. Helsper, 146 F.3d 452, 456 (7th Cir. 1998); Challenger, 619 F.2d at 649. The court's inquiry is not whether plaintiff will ultimately prevail in a trial on the merits, but whether the plaintiff should be afforded an opportunity to offer evidence in support of their claims. Cole v. U.S. Capital, Inc., 389 F.3d 719, 724 (7th Cir. 2004) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), (overruled on other grounds).

Furthermore, a complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief. Fed. R. Civ. P. 8(a); Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996). Under federal pleading rules, a plaintiff is neither limited to nor bound by the legal characterizations of his claims contained in the complaint. Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000). Although the complaint itself need not specifically or correctly identify the legal basis for any claim, in response to a motion to dismiss the plaintiff must identify the legal basis for the claim and make adequate legal arguments in support of it. Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041-42 (7th Cir. 1999).

## II. Background

Plaintiffs Adrian and Janelle Rangel's ("Plaintiffs") claims arise out of an incident occurring on or around February 6, 2007, when Plaintiffs took their daughter L.A.R. to the Tippecanoe County Health Department ("the health department" or "TCHD") for a regular

medical examination.[1] (Docket No. 58 at 3). Plaintiffs allege that at the February 6th visit, the health department's office manager Donella Carter ("Ms. Carter") made an appointment for L.A.R. with Nurse Sue O'Neill ("Ms. O'Neill") at the Tippecanoe County Health Clinic ("the health clinic" or "TCHC"). Id. Plaintiffs further allege that Ms. Carter told Plaintiffs that this appointment would be free of charge and, when Plaintiffs left the health department, Ms. Carter was seen "sneering" at them in "an evil way." Id. at 3-4.

On or about February 15, 2007, Plaintiffs allege that they arrived at the health clinic for their appointment. Id. Once there, Plaintiffs were informed that the appointment was not free of charge, as they had been told by Ms. Carter. Id. Plaintiffs told the health clinic staff that they did not want L.A.R. examined at that time. Id.

Later that day, Plaintiffs allege that Chris Reynolds, ("Ms. Reynolds")[2] a caseworker for the Tippecanoe Office of the Indiana Department of Child Services, showed up at Plaintiffs' residence in Lafayette. Id. Plaintiffs allege that Ms. Reynolds' visit was the result

---

[1]     Mr. Rangel has filed a motion to sever his now ex-wife Janelle as a plaintiff of record in this case. This motion has not yet been decided. However, whether Janelle is a party to this suit has no bearing upon the decision of this Court in considering the pending Motions to Dismiss. Accordingly, this Court will refer to Plaintiffs collectively.

[2]     Despite the Amended Complaint's confusing the gender of Chris Reynolds (i.e. stating that "he continued beating violently on the door demanding entrance" yet also stating that Chris Reynolds was "a female DCS worker") (Docket No. 6 at 4), given the pronoun references used by counsel in the Motion to Dismiss (Docket No. 121), it is clear that Ms. Reynolds is female, and therefore the Court will address her as such.

4

of Ms. O'Neill reporting that the child was in imminent danger. Id. Further, Plaintiffs allege that Ms. Reynolds beat on the door and threatened police intervention. Id. Thereafter, Ms. Rangel, who was home alone with L.A.R., let Ms. Reynolds into the home and called the Lafayette Police Department to the home. Id. Officer Quesenberry responded to the call and, according to Plaintiffs, Ms. Rangel "reluctantly opened the door." Id.

Plaintiffs then allege that Ms. Reynolds searched the house and took L.A.R. back to the health clinic to be examined by Ms. O'Neill. Id. According to Plaintiffs, Ms. O'Neill then diagnosed L.A.R. with failure to thrive and allegedly stated that the baby was starving. Id. Thereafter, Plaintiffs allege that Ms. Rangel was forced to nurse L.A.R. in front of the health clinic staff. Id. In addition, Plaintiffs claim that Ms. O'Neill and Dr. James Livermore committed medical malpractice in connection with L.A.R.'s examination. Id. at 2. The only specific allegations of malpractice involve L.A.R.'s dietary switch from breast milk to formula, which they allege resulted in her becoming bloated and ashen in appearance, and caused her to develop "new fat cells in her body which will never disappear since being treated by James Livermore and Sue O'Neill." Id. at 5.

On February 20, 2007, a probable cause hearing was held in Superior Court in Lafayette, with Judge Faith Graham presiding. Id. at 4. Plaintiffs allege that Ms. Reynolds produced a fraudulent probable cause affidavit at that hearing. Id. at 2. Thereafter, Judge Graham determined that L.A.R. should remain in state custody. Id.

Following L.A.R.'s removal from Plaintiffs' home, Plaintiffs allege that James Payne,

5

the director of the Indiana Department of Child Services, was guilty of "negligent supervision" of his employee, Ms. Reynolds. Id. at 5. Further, Plaintiffs allege that Stephanie Myers and Home-Based/Goal-focused Services for Children and Families ("HGCF") harassed the Plaintiffs. Id.

Plaintiffs then claim that they filed two Motions for Summary Judgment, both of which were denied by the state court. Id. Additionally, Plaintiffs unsuccessfully appealed the removal of L.A.R. to the Indiana Court of Appeals. See In re L.A.R., 892 N.E.2d 251, 2008 WL 2954035 (Ind. App. 2008).

Thereafter, this case began in this Court when Plaintiffs filed a *pro se* Complaint on March 12, 2007 (Docket No. 1). They subsequently filed an Amended *pro se* Complaint on March 15, 2007 (Docket No. 6), and a third Amended *pro se* Complaint on April 23, 2007 (Docket No. 58). When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward. See Fed. R. Civ. P. 15(a); Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999) (citing Carver v. Condie, 169 F.3d 469, 472 (7th Cir. 1999)). Accordingly, the only complaint that will be considered with respect to the pending Motions to Dismiss is the Plaintiffs' Third Amended Complaint. (Docket No. 58).

In their Third Amended Complaint, Plaintiffs brought suit against numerous individuals and organizations which were involved in the removal of their daughter including: Ms. Reynolds, Ms. Carter, Ms. O'Neill, Officer Quesenbery, the health clinic, the

City of Lafayette, Tippecanoe County, the Indiana Department of Child Services, Dr. Livermore, Mr. Payne, Ms. Myers, and HGCF.[3] Specifically, Plaintiffs allege the following: (1) that Ms. Reynolds, her boss Mr. Payne, and Officer Quesenbery violated Plaintiffs' 4th, 5th, and 14th Amendment rights; (2) that Ms. Myers conspired with Ms. Reynolds and Mr. Payne to deny Plaintiffs their "constitutional rights to life, liberty, and the pursuit of happiness"; (3) that Dr. Livermore conspired with Ms. Reynolds, Mr. Payne, Ms. Myers, Ms. Carter, HGCF, and the health department in order to deny the Plaintiffs the right to "raise their child"; and (4) that Dr. Livermore and Ms. O'Neill committed medical malpractice. (Docket No. 58 at 2).

Each Defendant has filed a Motion to Dismiss the cause of action for either lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. (Docket Nos. 101, 105, 112, 114, 116, 118, 120).

### III. Analysis

There are a myriad of reasons why this claim should not go forth, ranging from the jurisdictional to the procedural. First, Plaintiffs' claims are, to an extent, jurisdictionally barred by the Rooker-Feldman doctrine and their claims against several Defendants are barred by the Eleventh Amendment. Second, Plaintiffs have failed to state a claim for a Due Process violation under §1983 or a §1983 conspiracy. Finally, Plaintiffs' Third Amended

---

3      Plaintiffs also brought suit against Judge Graham. However, this Court granted Judge Graham's Motion to Dismiss on April 12, 2007 due to her absolute judicial immunity. (Docket No. 51).

Complaint fails to state a claim for a Fourth Amendment search and seizure violation under §1983.

A.    Jurisdiction

    (1)    The Rooker-Feldman Doctrine

The Rooker-Feldman doctrine provides that "lower federal courts lack jurisdiction to engage in appellate review of state-court determinations." Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir. 1996) (internal citation omitted). See also Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923).

This Court is acutely aware of the Seventh Circuit's decision in Loubser, in which the Court of Appeals stated:

> The grounds on which the district court dismissed [plaintiff's] suit were erroneous. The claim that a defendant in a civil rights suit "so far succeeded in corrupting the state judicial process as to obtain a favorable judgment" is not barred by the Rooker-Feldman doctrine. Otherwise there would be no federal remedy other than an appeal to the U.S. Supreme Court, and that remedy would be ineffectual because the plaintiff could not present evidence showing that the judicial proceeding had been a farce; one cannot present evidence to an appellate court. This is in general rather than in every case, and maybe Indiana law would have enabled [plaintiff] to present evidence in her appeal, but this issue has not been addressed.

Loubser v. Thacker, 440 F.3d 439, 441-442 (7th Cir. 2006).

In contrast, the Seventh Circuit held that a claim similar to those alleged in Plaintiffs' Third Amended Complaint were barred by Rooker-Feldman where, for instance, the plaintiff alleged that evidence offered by a caseworker at a hearing terminating his parental rights was

8

falsified and sought the reinstatement of his parental rights to his son. Davis v. Allen County Office of Family & Children, 1997 WL 267863, 1 (7th Cir. 1997). Similarly, in Mannix, the Seventh Circuit held that the district court lacked jurisdiction due to Rooker-Feldman where the plaintiff sought an injunction altering the state court's allocation of custody of her children. Mannix v. Machnik, 244 Fed.Appx. 37, 39 (7th Cir. 2007).

In the present case, there is no doubt that Plaintiffs are, in part, seeking a direct reversal of the decision of the Indiana Court of Appeals. See In re L.A.R., 892 N.E.2d 251, 2008 WL 2954035 (Ind. App. 2008). To the extent that Plaintiffs are seeking to have this Court take action, presumably via an injunction, to "immediately stop the maliscious [*sic*] harassment of Adrian and Janell Rangell," this Court lacks jurisdiction under Rooker-Feldman. (Docket No. 58 at 5). Likewise, Plaintiffs suit is barred by Rooker-Feldman to the extent that they seek to have this Court "take whatever steps necessary to reunify [Plaintiffs] with [their] child [L.A.R.] at the earliest possible date." Id.

However, in addition to the explicit return of their daughter, Plaintiffs are seeking monetary damages for a more nebulous Due Process violation under 42 U.S.C. §1983 and an illegal search and seizure claim. As to the former, Plaintiffs' Third Amended Complaint states that various parties conspired against Plaintiffs. As to the latter, Plaintiffs' Third Amended Complaint alleges that Officer Quesenbery and Ms. Reynolds committed an illegal search of the Rangel home and a seizure of L.A.R. for which Ms. Reynolds' boss, Mr. Payne, is also liable. These two claims are not direct appeals of the state court decision, in

9

contravention of the <u>Rooker-Feldman</u> doctrine. Nor are these two claims indirect requests for this Court to overturn the decision of the Indiana Court of Appeals. <u>See, e.g., Taylor</u>, 374 F.3d at 533 (stating that the question of whether the claims are "inextricably intertwined" with the state court judgment such that they strip the district court of jurisdiction under <u>Rooker-Feldman</u> can be answered by asking whether "the district court is in essence being called upon to review the state-court decision."). Accordingly, this Court has jurisdiction to hear Plaintiffs' conspiracy claims and illegal search and seizure claims, each of which will be considered in turn. <u>See</u> infra Parts A(2), B, C.

### (2)   The Eleventh Amendment

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Eleventh Amendment issues arise whenever a private citizen files a federal lawsuit against a state, a state agency, or a state official–although the effect of the amendment differs depending on the category of the defendant." <u>Scott v. O'Grady</u>, 975 F.2d 366, 369 (7th Cir. 1992) (citing <u>Kroll v. Board of Trustees of the University of Illinois</u>, 934 F.2d 904, 907 (7th Cir. 1991)).

### a.   Ms. Reynolds and Mr. Payne in their Official Capacity

Here, Plaintiffs allege that Ms, Reynolds, an employee of the Tippecanoe County office of the Indiana Department of Child Services ("DCS"), is guilty of the following:  (1)

taking L.A.R. in contravention of Plaintiff's Fourth Amendment Rights, (2) conspiring with various Defendants to deprive Plaintiffs of their right to raise their child, and (3) falsifying court documents.

In addition, Plaintiffs claim that Mr. Payne, the director of DCS, is guilty of the following: (1) participating in a conspiracy with the other Defendants to deny Plaintiffs their constitutional rights, and (2) negligently supervising Ms. Reynolds.

Both Ms. Reynolds and Mr. Payne seek dismissal of the allegations against them pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that this Court has no federal jurisdiction due to the fact that Indiana has not waived its sovereign immunity. See Fryman v. U.S., 901 F.2d 79, 80 (7th Cir 1990). Indeed, federal suits against state officials in their official capacities are barred by the Eleventh Amendment. Brokaw v. Mercer County, 235 F.3d 1000, 1009 (7th Cir. 2000); Gossmeyer v. McDonald, 128 F.3d 481, 487 (7th Cir. 1997). As the director of DCS, Mr. Payne is a state official, and, as such, he is not a "person" subject to suit under §1983. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989). Similarly, as an employee of DCS, Ms. Rangel is not a "person" subject to liability under §1983. Id. Thus, to the extent that Plaintiffs have brought a claim against Ms. Reynolds and Mr. Payne in their official capacity, this Court lacks jurisdiction to hear those claims due to the Eleventh Amendment.

However, Plaintiffs also state that they are bringing suit against Ms. Reynolds and Mr. Payne in their individual capacities; claims that this Court will now consider, in turn.

11

### b.    Ms. Reynolds in her Individual Capacity

Ms. Reynolds argues that Plaintiffs have stated no claims against her in her individual capacity. It is true that Plaintiffs' Third Amended Complaint does not specify the capacity in which Plaintiffs are suing Ms. Reynolds, and a §1983 complaint that fails to specify capacity is usually construed to be an official capacity suit. Stevens v. Umstead, 131 F.3d 697, 706 (7th Cir. 1997). However, even if this Court were to consider Plaintiffs' *pro se* status, and construe Plaintiffs' claims against Ms. Reynolds in her individual capacity, Plaintiffs still would not prevail.

To establish personal liability under §1983, Plaintiffs must show that Ms. Reynolds "caused the deprivation of a federal right." Luck v. Rovenstine, 168 F.3d 323, 327 (7th Cir. 1999) (citing Hafer v. Melo, 502 U.S. 21, 25 (1991)). In their responsive pleadings Plaintiffs claim that Ms. Reynolds submitted "false and misleading . . . court room testimony and false documentation" to the court. (Docket No. 129 at 1).

Yet, it appears Plaintiffs' Due Process deprivation arises not from Ms. Reynolds' falsified evidence, but from the state court's reliance upon that evidence. To that end, Judge Easterbrook's decision in Millspaugh v. County Dept. of Public Welfare of Wabash County, 937 F.2d 1172 (7th Cir. 1991), is illustrative. In Millspaugh, the plaintiffs alleged that a county social worker "made arguments to the court, furnished or withheld evidence, and so on," thus causing plaintiffs a deprivation of their children. Id. at 1175. The court held that, even assuming the social worker "acted out of improper motives and misled the court," her

12

actions could yield no harm to the plaintiffs unless the court to which she presented the false evidence agreed. Id. (citing Burns v. Reed, 500 U.S. 478 (1991); Imbler v. Pachtman, 424 U.S. 409 (1976)). Thus, the Millspaugh Court reasoned that, because witnesses and prosecutors enjoy absolute immunity, if there would be no loss but for the judge's acts, absolute immunity is similarly given to a "social worker [who] presents the case to a court." Id. at 1177.

Here, Plaintiffs have alleged that Ms. Reynolds probable cause affidavit, written and submitted for the purpose of a probable cause hearing, was not credible. For the purposes of the Motion to Dismiss, this Court will accept as true that the affidavit was, in fact, false. Even so, writing a false probable cause affidavit, without more, did not deprive Plaintiffs of any constitutional right. It was the Judge's action in relying upon that affidavit that ultimately stripped Plaintiffs of custody of L.A.R. Accordingly, even if Ms. Reynolds' motive and actions were improper, she is, nonetheless, entitled to absolute immunity.

Although this Court's inquiry into the claims against Ms. Reynolds could end there, it bears noting that even if Plaintiffs' claims against Ms. Reynolds extended to her authority in seizing L.A.R., Millspaugh is also instructive on the issue of whether immunity applies to an official who seizes a child to in order to determine whether the minor is a 'child in need of services.' Id. There the court held that "[s]allying forth to collect the children is no different from seizing evidence on the authority of a warrant, which . . . is covered by qualified immunity . . ." Id at 1176. Moreover, Judge Easterbrook held that qualified

immunity protects a social worker who had sufficient basis for removing the child from the home in order to determine whether the minor was a 'child in need of services.' This is so even where a social worker has "some additional (and constitutionally dubious) reason for acting as she did." Id. (citing Anderson v. Creighton, 483 U.S. 635 (1987); Harlow v. Fitzgerald, 457 U.S. 800 (1982)).

Here, Plaintiffs' Third Amended Complaint states the following about Ms. Reynolds' seizure of L.A.R.: "[A]t about 12:30 pm Feb 15th 2007 DCS/CPS worker Chris Reynolds, defendant, showed up unannounced at the Rangel residence. . . . Apparently, Sue O'Neil [*sic*] at the Tippecanoe Community Health Center had made a false report that the child was in imminent danger and being denied medical care." (Docket No. 58 at 4). Neither the Complaint nor Plaintiffs' responsive pleadings contains an allegation that Ms. Reynolds knowingly violated the law in removing L.A.R. from the Rangel residence. To the contrary, based on Plaintiffs' own Complaint, Ms. Reynolds proceeded to the Rangel residence based on a tip from Ms. O'Neill. Without any allegation that Ms. Reynolds knowingly violated the law in initially investigating the Plaintiffs, she had an "objectively reasonable basis for her acts" and qualified immunity would apply. Id. at 1177.

In sum, even if this Court accepts all of Plaintiffs' allegations as true, they have failed to state a claim against Ms. Reynolds upon which relief can be granted. The Eleventh Amendment prevents this Court from asserting jurisdiction over Ms. Reynolds in her official capacity and, even if Plaintiffs had properly brought an individual capacity claim against Ms.

Reynolds, she would be immune from suit. Accordingly, Ms. Reynolds' Motion to Dismiss is **GRANTED**. (Docket No. 120).

### c. Mr. Payne in his Individual Capacity

Plaintiffs' allegations against Mr. Payne also cannot succeed as an individual capacity claim. In their Third Amended Complaint, Plaintiffs state that "James W Payne . . . is guilty of negligent supervision in failing to adequately supervise Chris Reynold's [*sic*] actions." (Docket No. 58 at 2). However, it is well settled that "the doctrine of *respondeat superior* does not apply to §1983 actions," and Plaintiffs have not alleged any direct involvement on the part of Mr. Payne. Guenthenspberger v. Carter, 81 Fed.Appx. 858, 860 (7th Cir. 2003) (citing Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001)). Furthermore, liability under §1983 "cannot be founded on negligence." Harris v. Kuba, 486 F.3d 1010, 1014 (7th Cir. 2007) (quoting Loubser, 440 F.3d at 442). Accordingly, Mr. Payne's Motion to Dismiss is **GRANTED**.[4] (Docket No. 112).

### d. Indiana Department of Child Services ("DCS")

Plaintiffs also brought suit against Mr. Payne's employer, DCS. DCS is not mentioned in Plaintiffs' Third Amended Complaint; thus Plaintiffs have not stated a claim against DSC upon which relief can be granted.

---

[4]     Even if Plaintiffs' claims against Ms. Reynolds and Mr Payne were not barred by the Eleventh Amendment, Plaintiffs' conspiracy claim against Ms. Reynolds and Mr. Payne would still fail for the reasons set forth in Part C, infra (noting Plaintiffs' failure to adequately plead a conspiracy).

Moreover, though there is some dispute as to whether DCS is still a party to this suit. (Docket Nos. 44, 56, 145 at 1) this Court need not decide the issue because the Eleventh Amendment prevents this Court from exercising jurisdiction over DCS.[5]

DCS is an Indiana State agency and "[a]ll suits against a state or its agencies are barred by the Eleventh Amendment unless the state consents to suit in federal court or Congress uses its powers under the Fourteenth Amendment to abrogate the state's Eleventh Amendment immunity." Scott, 975 F.2d at 369 (citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985)). However, it is well established that, in passing § 1983, Congress "did not intend to sweep away the immunity of the States." Quern v. Jordan, 440 U.S. 332, 345 (1979). Accordingly, DSC is immune from suit under the Eleventh Amendment. Thus, DSC's Motion to Dismiss is **GRANTED** on jurisdictional grounds. (Docket No. 118).

---

5    Although DSC filed its Motion to Dismiss under 12(b)(6) rather than 12(b)(1), the Eleventh Amendment sets forth a jurisdictional limit. See, e.g., Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984) (holding that the Eleventh Amendment "deprives federal courts of any jurisdiction to entertain" suits against the states); Edelman v. Jordan, 415 U.S. 651, 678 (1974) (holding that the Eleventh Amendment defense "partakes of the nature of a jurisdictional bar."). Furthermore, the Seventh Circuit has held that federal district courts can raise an Eleventh Amendment defense on its own initiative. Higgins v. Mississippi, 217 F.3d 951, 954 (7th Cir. 2000). Here, the agency made an Eleventh Amendment argument in support of their 12(b)(6) Motion to Dismiss and the Court is granting DSC's Motion on jurisdictional grounds.

B.    §1983 Due Process and Conspiracy Claims

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983. To prevail on a claim under section 1983, Plaintiffs must show the following: (1) they held a constitutionally protected right; (2) they were deprived of this right in violation of the Constitution; (3) the Defendants intentionally caused this deprivation; and (4) the Defendants acted under color of law. Donald v. Polk County, 836 F.2d 376, 379 (7th Cir. 1988). Here, Plaintiffs allege violations of their substantive Due Process Rights stemming from the removal of their daughter by the State of Indiana.

Without question, a parent's interest in the care and custody of his or her child is subject to the protections of the Fourteenth Amendment. See, e.g., Troxel v. Granville, 530 U.S. 57, 65 (2000); Lassiter v. Department of Social Services, 452 U.S. 18, 24-32 (1981); Ellis v. Hamilton, 669 F.2d 510, 512 (7th Cir. 1982) ("It is plain to us that the 'liberty' protected by the due process clause of the Fourteenth Amendment includes the right to the custody of one's minor children . . . ."). Yet, the right to family integrity is not absolute, and a family's due process interests must be balanced against the government's interest in protecting children from abuse. Berman v. Young, 291 F.3d 976, 983 (7th Cir. 2002).

17

Neither the Defendants, nor this Court, dispute the enormity of Plaintiffs' liberty interest in the care and custody of L.A.R. However, many Defendants argue that Plaintiffs' Complaint fails to set forth a cause of action upon which relief can be granted.

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief." Bell Atl., 550 U.S. at 554. The purpose of the short and plain statement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

In the context of a §1983 action, a plaintiff must allege facts which show that the defendant, acting under color of state law, intentionally and unlawfully deprived the plaintiff of a constitutional right. Anderson v. Simon, 217 F.3d 472, 474 (7th Cir. 2000) (citing Patrick v. Jasper County, 901 F.2d 561, 565 (7th Cir.1990)). Otherwise, dismissal is proper under Federal Rule of Civil Procedure 12(b)(6). Id.

Furthermore, with regard to conspiracy allegations, the Seventh Circuit has stated:

> [A]lthough conspiracy is not something that Rule 9(b) of the Federal Rules of Civil Procedure requires be proved with particularity . . . it differs from other claims in having a degree of vagueness that makes a bare claim of 'conspiracy' wholly uninformative to the defendant. Federal pleading entitles a defendant to notice of the plaintiff's claim so that he can prepare responsive pleadings. That is why courts require the plaintiff to allege the parties, the general purpose, and the approximate date of the conspiracy.

Pratt v. Tarr, 464 F.3d 730, 732 (7th Cir. 2006) (quoting Loubser, 440 F.3d at 442-43). In

addition, the Seventh Circuit has succinctly described the pleading requirements of a conspiracy as demanding that the Plaintiff identify "the who, what, when, why, and how." Brokaw v. Mercer County, 235 F.3d 1000, 1016 (7th Cir. 2000) (noting that "No more is required" to survive a Motion to Dismiss).

### (1)    Ms. Carter and Tippecanoe County

Plaintiffs allege that Ms. Carter, a health department employee, entered into a conspiracy to deprive them of their rights. In contravention of Federal Rule of Civil Procedure 8(a)(2), this allegation was made for the first time in Plaintiffs' responsive pleadings. However, even if this allegation had been made in the Complaint, it would still be deficient. Plaintiffs claiming a conspiracy are required to allege the parties, the general purpose, and the date of the conspiracy. Pratt, 464 F.3d at 732. Here, Plaintiffs merely state that "Carter used her position with the Tippecanoe County Health Department to initiate a conspiracy ultimately depriving [Plaintiffs] of the enjoyment and privilege of raising their healthy child. . . ." (emphasis in original) (Docket No 109 at 1). Thus, even if the conspiracy allegation had been included in Plaintiffs' Complaint, this allegation would still fail due to Plaintiffs' failure to identify the parties and the date of the alleged conspiracy. Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted against Ms. Carter.[6]

---

[6]    In addition to their conspiracy claim, Plaintiffs cite two different statutes in alleging that Ms. Carter and Tippecanoe County have violated federal law: 42 U.S.C. §14141 and 18 U.S.C. § 1001. (Docket No. 104). Yet, these arguments are unavailing because neither statute offers Plaintiffs a private right of action under which they may sue Defendants. See Slovinec v. Ill. Dep't of Human Servs., 2005 U.S. Dist. LEXIS

In addition, due to Ms. Carter's actions, Plaintiffs allege that her employer, Tippecanoe County, is also liable. The County's liability can only be predicated on *respondeat superior* as Plaintiffs have alleged no acts or omissions on the part of the county. However, under §1983, courts have, "consistently refused to hold municipalities liable under a theory of *respondeat superior*." Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997). The only way for the County to incur any *respondeat superior* liability under §1983 is if the county or municipality was the "moving force" behind the injury alleged. Id.

Plaintiffs' Third Amended Complaint says nothing about Tippecanoe County. Further, in their responsive pleadings, Plaintiffs state that the unwritten policy of the County was to "report concern [*sic*] about a childs'[*sic*] well being WHEN MERITED." (emphasis in original) (Docket No. 110 at 2). Plaintiffs argue that in their case, a report was not merited. Thus, they do not allege that Ms. Carter's behavior was sanctioned by Tippecanoe County, let alone that Tippecanoe County was the "driving force" behind the behavior. To the contrary, Plaintiffs allege that Ms. Carter acted counter to the County's policy. Accordingly, even construing all facts in Plaintiffs' favor, they have failed to state a claim

---

44523 (N.D. Ill. Feb. 22, 2005) (citing Fed. Sav. and Loan Ins. Corp. v. Reeves, 816 F.2d 130, 137 n.9 (4th Cir. 1987) ("18 U.S.C. § 1001, which concerns false statements to federal officials, is inapt because a private litigant . . . cannot prosecute a criminal offense such as a Section 1001 violation: it does not confer a private right of action."); Civil Rights Division, U.S. Dep't of Justice, Addressing Police Misconduct: Laws Enforced by the DOJ at 4 ("There is no private right of action under this law (42 U.S.C. §14141); only DOJ may file suit for violations of the Police Misconduct Provision").

against Tippecanoe County.

Because Plaintiffs have failed to state a claim upon which relief can be granted against Defendants Ms. Carter and Tippecanoe County, dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6). Therefore, the Motion to Dismiss the claims against Ms. Carter and Tippecanoe County is **GRANTED**. (Docket No. 102).

(2)    <u>HGCF and Ms. Myers</u>

Plaintiffs allege that HGCF and its principal officer, Ms. Myers, conspired with a number of other parties in order to deprive Plaintiffs of their "constitutional rights to raise a child" and their "constitutional rights to life, liberty and the pursuit of happiness." (Docket No. 58 at 2). Further, Plaintiffs allege that Ms. Myers and HGCF are "directly responsible for alienating [*sic*] of affection, parental alienation, invasion of privacy both personal and family in the plaintiffs [*sic*] household," due to their harassment of Plaintiffs. <u>Id</u>. at 5.

As to Plaintiffs' conspiracy claims against Ms. Myers and HGCF, there is absolutely no indication of when (or approximately when) this alleged conspiracy took place. Thus, according to the dictates of Seventh Circuit precedent, Plaintiffs' allegation of conspiracy is "wholly uninformative" as to Ms. Myers and HGCF, and is not enough to survive a Motion to Dismiss. <u>See</u> <u>Pratt</u>, 464 F.3d at 732; <u>Loubser</u>, 440 F.3d at 442-43.

Moreover, Plaintiffs' claims against Ms. Myers and HGCF are devoid of any factual allegations. While detailed factual allegations are not necessary, a plaintiff is still required

21

to provide the grounds of his or her entitlement to relief. As the United States Supreme Court recently reaffirmed in <u>Bell Atlantic</u>:

> Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

<u>Bell Atl.</u>, 550 U.S. at 554 (citing 5 Wright & Miller § 1202, at 94, 95).

Here, Plaintiffs state only that their rights were violated by HGCF due to harassment. Plaintiffs have failed to "allege facts which show that the defendant, acting under color of state law, intentionally and unlawfully deprived the plaintiff of a constitutional right." <u>Anderson</u>, 217 F.3d at 474. Thus, even under liberal notice pleading requirements, Plaintiffs have failed to state a claim against HGCF and Ms. Myers upon which relief can be granted. Accordingly, Ms. Myers and HGCF's Motion to Dismiss is **GRANTED**. (Docket No. 114).

 (3) <u>Ms. O'Neill, TCHC, & Dr. Livermore</u>

Plaintiffs allege that Dr. Livermore conspired with numerous other Defendants to "deny plaintiffs their constitutional right to raise their child." (Docket No. 58 at 2). Additionally, Plaintiffs claim that Dr. Livermore and Ms. O'Neill, who is a nurse at TCHC, committed medical malpractice.

To the extent that Plaintiffs allege that Dr. Livermore participated in a conspiracy, their claim suffers the same deficiency as Plaintiffs' other conspiracy claims: namely, the Plaintiffs' Third Amended Complaint gives no indication of approximately when this alleged

conspiracy took place. Thus, Plaintiffs' conspiracy allegations against Dr. Livermore fail to state a claim upon which relief can be granted and are insufficient to survive a Motion to Dismiss. See Pratt, 464 F.3d at 732; Loubser, 440 F.3d at 442-43.

In addition, Plaintiffs fail to state a claim upon which relief can be granted because Dr. Livermore and Ms. O'Neill are not state actors such that they can be held liable under §1983. Plaintiffs allege that Dr. Livermore and Ms. O'Neill "did act in concert to continue the farceness [sic]" of L.A.R.'s diagnosis and removal from the Rangel home. (Docket No. 136 at 2-3). In other words, Plaintiffs argue that, by making the diagnosis that the state used to support L.A.R.'s removal, Dr. Livermore and Nurse O'Neill became state actors. Yet, caselaw does not support this position. See, e.g., Brokaw, 235 F.3d at 1016 ("filing a report of child neglect with a state actor, even if false, is insufficient to create liability under Section 1983."); Evans v. Torres, 1996 WL 5319, at *7 (N.D.Ill. 1996) (holding that a physician and a pediatric center were not state actors even when they contracted with the state and received compensation in return for reporting their findings to the state's Department of Children and Family Services and testifying at criminal proceedings).

Since neither Dr. Livermore nor Ms. O'Neill are state actors, the only way they could be held liable under §1983 is if they acted in concert with state actors. Dennis v. Sparks, 449 U.S. 24, 27 (1980). However, Plaintiffs deficiency in pleading a §1983 conspiracy–their failure to identify "the who, what, when, why, and how" of the alleged conspiracy–also means that Plaintiffs have failed to establish liability for private actors under §1983. Brokaw,

235 F.3d at 1016.

However, even if Dr. Livermore and Ms. O'Neill were state actors, Plaintiffs' Due Process claims against them fail. Plaintiffs claims against Dr. Livermore and Ms. O'Neill consist of actions peripheral to the removal of L.A.R; in particular their diagnosis and examination of L.A.R. following her removal from the Rangel home. Examination of L.A.R., without more, does not deprive Plaintiffs of any constitutional right. Thus, Plaintiffs have failed to state a claim against Dr. Livermore and Ms. O'Neill under §1983.

Finally, Plaintiffs brought a medical malpractice claim against Dr. Livermore and Ms. O'Neill, both of whom argue that this Court lacks jurisdiction to hear the medical malpractice claim. (Docket No. 58 at 2,5). Though it is true that Plaintiffs do not explicitly identify the basis for this Court's jurisdiction over their pendant state law claim, Plaintiffs are proceeding *pro se*. Thus, this Court will not dismiss their medical malpractice claim for failure to cite to the relevant jurisdictional statute.

Further, given that the medical malpractice claim arises out of the same medical treatment that Plaintiffs claim deprived them of their Due Process rights under the U.S. Constitution, it seems that both claims arise out of a "common nucleus of operative fact" such that supplemental jurisdiction over the state law claim is not improper. See Hansen v. Bd. of Trs. of Hamilton Southeastern Sch. Corp., 551 F.3d 599, 607 (7th Cir. 2008) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).

However, Indiana law provides that "an action against a health care provider may not

be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel . . . and (2) an opinion is given by the panel." See Ind. Code § 34-18-8-4. Although a claim may be filed in court prior to the medical review panel's opinion, plaintiffs are barred from "pursuing the action," and their complaint "may not contain any information that would allow a third party to identify the defendant." Ind. Code § 34-18-8-7.

Helpful to this case is Chief Judge Miller's recent opinion in Estate of Rice ex rel. Rice v. Correctional Medical Services, 596 F.Supp.2d 1208, 1225 (N.D.Ind, 2009), as follows:

> The Indiana General Assembly doesn't decide the jurisdiction of the federal courts, so the legislative prohibition on court action doesn't affect this court's subject-matter jurisdiction. But because the review panel hasn't issued an order and the plaintiff didn't file suit pursuant to section 7, the . . . complaint states no claim upon which relief can be granted under Indiana law . . . .

Id. (internal citations omitted). Here, Plaintiffs failed to bring their claim before the medical review panel and follow the procedures outlined in Ind. Code § 34-18-8-7. Thus, their medical malpractice claim against Dr. Livermore and Ms. O'Neill fail to state a claim and dismissal is proper.

Accordingly, because Plaintiffs have failed to state a conspiracy claim, a Due Process claim, or a medical malpractice claim against Defendants Dr. Livermore, Ms. O'Neill, and TCHC, their Motion to Dismiss is **GRANTED**. (Docket No. 116).

C. §1983 Unlawful Search and Seizure under 4th Amendment

The Forth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend. IV. Although warrants are generally required for police searches, the United States Supreme Court has held that a warrantless search is allowed if a pre-existing exemption applies. For example, warrantless searches are allowed when an individual possessing authority has given the police consent to conduct a search. See Illinois v. Rodriguez, 497 U.S. 177, 181 (1990) (holding that a warrantless search of a person's home is allowed when the police have the voluntary consent of the individual whose property is being searched, or the consent of a third party who has common authority over the property).

However, consent must be given freely and voluntarily, with the voluntariness of consent determined from the totality of the circumstances, including both the characteristics of the searched party and the details of the interrogation. Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973).

Here, Plaintiffs allege that Officer Quesenbery unlawfully entered the Rangel home. It should be noted at the outset that Plaintiffs' Third Amended Complaint does not allege that Officer Quesenbery searched the Rangel home or seized anything. To the contrary, Plaintiffs

merely allege that he "entered" the house and "stood guard." Accordingly, Plaintiffs' Complaint fails to adequately allege that Officer Quesenbery conducted an unlawful search and seizure.

However, even if Plaintiffs had properly alleged an unlawful search and seizure, it is undisputed that Officer Quesenbery had consent to enter the home. Plaintiffs argue that Ms. Rangel's consent was invalid due to her Attention Deficit Hyperactivity Disorder ("ADHD"). Furthermore, Plaintiffs argue that Officer Quesenbery knew of Ms. Rangel's ADHD and thus, knew that her consent was invalid.

This Court is aware of no mandatory authority on this particular issue and of only one case, arising out of the United States District Court for the Western District of Michigan, where a court considered ADHD's impact on the validity of consent under the Fourth Amendment. Fewless ex rel. Fewless v. Board of Educ. of Wayland Union Schools, 208 F.Supp.2d 806 (W.D.Mich. 2002) (holding that a fourteen year-old student with ADHD did not give free and voluntary consent to strip search though he was told that he did not have to undergo search). However, this case is distinguishable from Fewless due to the fact that the Fewless Court considered numerous factors other than plaintiff's ADHD. For example, the Court noted that the plaintiff in Fewless was a minor, he was subjected to a strip search, which the court termed a particularly "intrusive type of search," and he was closed in a small room, a "vulnerable youth in a situation akin to police custody." Id. at 814-15.

Such was not the case here, where Ms. Rangel–an adult of at least twenty-two years

27

of age who was in her own home–personally called Officer Quesenbery to the residence. Moreover, given that "the presence or absence of any one factor is not determinative" when considering the validity of consent, the mere presence of Ms. Rangel's ADHD does not mean that a reasonable jury could find her consent invalid. United States v. Strache, 202 F.3d 980, 985 (7th Cir. 2000). This is especially apparent when one considers the relative seriousness of mental impairments that other circuits have found did not render consent invalid. See e.g., United States v. Ross, No. 91-5151, 1992 WL 175973 (4th Cir. Feb. 4, 1992) (per curiam) (upholding the validity of consent given by a woman who suffered from long-term brain damage and a resulting mental condition); United States v. Sims, 428 F.3d 945, 953 (10th Cir 2005) (upholding the validity of consent given by a man who was diagnosed with Frontotemporal Dementia, a form of dementia causing progressive loss of basic cognitive abilities). See also, Brian S. Love (comment) Beyond Police Conduct: Analyzing Voluntary Consent to Warrantless Searches by the Mentally Ill and Disabled, 48 St. Louis U. L.J. 1469, 1475 -1476 (2004) (setting forth numerous state court decisions upholding consent given by those with mental impairments).

Even if, as Plaintiffs allege, Officer Quesenbery was aware of Ms. Rangel's ADHD, an examination of relevant authority convinces this Court that the officer's knowledge of Ms. Rangel's ADHD would not be sufficient to render her consent involuntary. For example in United States v. Strache, 202 F.3d 980, the Seventh Circuit upheld the voluntariness of a consent to search given by a mentally ill and suicidal defendant. Id. Critically, in Strache,

the police officer who arrived at the scene knew about two suicide threats made that morning by the plaintiff. Thus, when the police acquired the plaintiff's consent to the search, they knew about his mental condition just as Plaintiffs argue Officer Quesenbery knew of Ms. Rangel's ADHD. Such prior knowledge is not enough to render Ms. Rangel's consent invalid and Plaintiffs have failed to state a claim upon which relief can be granted against Officer Quesenbery.[7]

In addition, Plaintiffs' claims against the City of Lafayette are not enough to survive a Motion to Dismiss. Like Tippecanoe County, the City of Lafayette's alleged liability can only be predicated on *respondeat superior* as Plaintiffs have alleged no acts or omissions on the part of the City. However, under §1983, courts have, "consistently refused to hold municipalities liable under a theory of *respondeat superior*." Brown, 520 U.S. at 404. The only way for the County to incur any *respondeat superior* liability under §1983 is if the county or municipality was the "moving force" behind the injury alleged. Id.

Plaintiffs' Third Amended Complaint says nothing about the City of Lafayette. Furthermore, in their responsive pleadings, Plaintiffs state that Officer Quesenbery acted "as a policy maker. He acted as a policy maker because he consciously chose to execute a search

---

7    Once again, in their responsive pleadings, Plaintiffs cite to 42 U.S.C. §14141 and 18 U.S.C. 1001 (see supra n.4) and once again, their arguments are unavailing as neither statute offers Plaintiffs a private right of action under which they may sue Defendants. See Reeves, 816 F.2d at 137 n.9 (4th Cir. 1987); Civil Rights Division, U.S. Dep't of Justice, Addressing Police Misconduct: Laws Enforced by the DOJ at 4.

of the Rangel [*sic*] . . . He made a conscious decision amongst several possible decisions."

(Docket No. 107 at 2) (emphasis in original). Thus, given Plaintiffs' allegations that Officer

Quesenbery was a policy maker in the decision to search the Rangel home, the municipality

of Lafayette could not have been the "moving force" behind the alleged injury as is required

by <u>Brown</u>. Similarly, even if, as Plaintiffs allege, the City had an unwritten policy of

working with DCS employees, this is not enough to show that the City was the moving force

behind Officer Quesenbery's actions. Thus, even assuming arguendo, that Plaintiffs had

stated a claim against Officer Quesenbery and that all of their allegations are true, Plaintiffs'

allegations against the City of Lafayette are not enough to survive a Motion to Dismiss. As

such, Officer Quesenbery and the City of Lafayette's Motion to Dismiss is **GRANTED**.

(Docket No. 105).

## IV. Conclusion

Plaintiffs Adrian and Janelle Rangel's claims against Defendants (Ms. Reynolds, Ms.

Carter, Ms. O'Neill, Officer Quesenbery, the health clinic, the City of Lafayette, Tippecanoe

County, the Indiana Department of Child Services, Dr. Livermore, Mr. Payne, Ms. Myers,

and HGCF) are to be dismissed for two reasons. First, as to many Defendants, this Court

lacks jurisdiction to hear Plaintiffs' claims due to the Eleventh Amendment. Second, even

construing all facts in their favor, Plaintiffs have failed to state a claim upon which relief can

be granted against all other Defendants. Accordingly, each of the various Motions to

Dismiss is hereby **GRANTED**. (Docket Nos. 102, 105, 112, 114, 116, 118, 120). As a result,

each pending non-dispositive motion is **DENIED** as Moot. (Docket Nos. 124, 125, 138, 141, 159). This case is now considered closed with each party to bear its own costs.

**SO ORDERED.**

**April 9, 2009.**

<div align="center" style="margin-left:40%">

____/S/ ALLEN SHARP_____
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**

</div>